**DUANE MORRIS LLP**
Sean Patterson (SBN 234565)
CSPatterson@duanemorris.com
Daniel D. Wall (SBN 311391)
DWall@duanemorris.com
Spear Tower
One Market Plaza, Suite 2200
San Francisco, California 94105-1127
Telephone: +1 415 957 3000
Facsimile: +1 415 957 3001

Attorneys for Defendant
MY TECHNOLOGY, INC., d/b/a MYPRIZE.US

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RAYMOND MIRZAYAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MY TECHNOLOGY, INC., d/b/a MYPRIZE. US,

Defendant.

Case No. 3:25-cv-07313-JSC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MY TECHNOLOGY, INC's MOTION TO COMPEL ARBITRATION**

Dept: Courtroom 8, 19th Floor
Judge: Judge Jacqueline Scott Corley
Date: February 5, 2026
Time: 10:00 am.

Trial Date: None Set
Date Class Action Filed: August 8, 2025

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. MyPrize's Services and Plaintiff's Allegations. ..... 2

B. Users Must Accept the Terms of Use Before Making Purchases on the Platform ..... 3

1. Assent Process ..... 3

2. Hyperlinks and Access to Full Terms ..... 4

3. System Records Confirming Plaintiff's Assent ..... 5

C. The Relevant Terms of Use Contain a Binding Arbitration Agreement and Delegation Clause ..... 5

D. Plaintiff's Claims Arise from the Service He Received and the Terms of Use He Accepted ..... 7

III. LEGAL STANDARD ..... 7

IV. ARGUMENT ..... 8

A. Delaware Law and the FAA Govern ..... 8

B. The Arbitration Clause Is Valid and Enforceable ..... 10

1. The FAA Requires Enforcement ..... 10

2. The Arbitrator Decides All Issues of Enforceability or Scope ..... 10

3. The Arbitration Agreement Is Not Procedurally Unconscionable ..... 11

4. The Arbitration Agreement Is Not Substantively Unconscionable ..... 12

5. Any Illegality Allegations Do Not Render the Arbitration Clause Unenforceable ..... 13

C. Plaintiff's Claims Fall within the Scope of the Arbitration Agreement ..... 14

D. The Court Should Stay or Dismiss this Action Pending Arbitration ..... 14

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Express Co. v. Italian Colors Restaurant*
570 U.S. 228 (2013) ........ 8, 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*
475 U.S. 643 (1986) ........ 8

*Ball v. Skillz Inc.*
No. 2:20-cv-00888, 2020 WL 6685514 (D. Nev. Nov. 12, 2020) ........ 2, 11

*Berman v. Freedom Fin. Network, LLC*
30 F.4th 849 (9th Cir. 2022) ........ 1, 12

*Bielski v. Coinbase, Inc.*
87 F.4th 1003 (9th Cir. 2023) ........ 13

*Bishoy Nessim v. Fliff, Inc.*
No. 5:23-cv-01048-SSS-SHK (C.D. Cal. Jan. 5, 2024) ........ 9, 11, 13

*Buckeye Check Cashing, Inc. v. Cardegna*
546 U.S. 440 (2006) ........ 2, 11, 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
207 F.3d 1126 (9th Cir. 2000) ........ 8, 10

*Dean Witter Reynolds, Inc. v. Byrd*
470 U.S. 213 (1985) ........ 1, 8, 10, 14

*Epic Sys. Corp. v. Lewis*
138 S.Ct. 1612 (2018) ........ 8, 10, 12

*Gilmer v. Interstate/Johnson Lane Corp.*
500 U.S. 20 (1991) ........ 8

*Green Tree Fin. Corp.-Ala. v. Randolph*
531 U.S. 79 (2000) ........ 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
139 S. Ct. 524 (2019) ........ 8, 10

*Johnmohammadi v. Bloomingdale's, Inc.*
755 F.3d 1072 (9th Cir. 2014) ........ 14

*Kilgore v. KeyBank, N.A.*
718 F.3d 1052 (9th Cir. 2013) ........ 12

*Lag Shot LLC v. Facebook, Inc.*
No. 21-CV-01495-JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021)........................................ 1

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012)........................................................................................ 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983)......................................................................................................... 8

*Oberstein v. Live Nation Ent., Inc.*
60 F.4th 505 (9th Cir. 2023) ................................................................................... 1, 12

*Rent-A-Center, W., Inc. v. Jackson*
561 U.S. 63 (2010)...................................................................................... 8, 10-11, 13

*Simula, Inc. v. Autoliv, Inc.*
175 F.3d 716 (9th Cir. 1999)...................................................................................... 14

*Singh v. Adobe Inc.*
No. 3:24-cv-03980-JSC, 2025 WL 2197142 (N.D. Cal. Aug. 1, 2025) ...................... 1, 11-12

*Tompkins v. 23andMe, Inc.*
840 F.3d 1016 (9th Cir. 2016)................................................................................. 1, 11

*Yei A. Sun v. Advanced China Healthcare, Inc.*
901 F.3d 1081 (9th Cir. 2018)........................................................................................ 9

**California Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*
24 Cal.4th 83 (2000) ................................................................................................. 11

*Baltazar v. Forever 21, Inc.*
62 Cal.4th 1237 (2016) ........................................................................................ 12-13

*Nedlloyd Lines B.V. v. Superior Ct.*
3 Cal.4th 459 (1992) ................................................................................................... 9

*Prof'l Collection Consultants v. Lauron*
8 Cal.App.5th 958 (2017) ............................................................................................ 9

*Sonic-Calabasas A, Inc. v. Moreno*
57 Cal.4th 1109 (2013) .............................................................................................. 12

**Other State Cases**

*James & Jackson, LLC v. Willie Gary, LLC*
906 A.2d 76 (Del. 2006) ......................................................................................... 9, 11

**Federal Statutes**

9 U.S.C. § 2 ........ 7, 10, 14

9 U.S.C. § 3 ........ 8, 10, 14

9 U.S.C. § 4 ........ 8, 10, 14

## I. INTRODUCTION

Plaintiff Raymond Mirzayan ("Plaintiff' or "Mirzayan") filed claims against Defendant My Technology, Inc. d/b/a "MyPrize.US" ("Defendant," "My Technology" or "MyPrize") that are subject to arbitration on an individual basis and therefore do not belong in federal court.

Plaintiff could not access the MyPrize platform without registering for an account, and he could not make any monetary transactions without first agreeing to MyPrize's Terms of Use ("TOU" or "Terms") and Sweepstakes Rules, which expressly incorporate the TOU. (Declaration of Bryan Weisgal ("Weisgal Decl.") ¶ 8.) The TOU designates Delaware as the proper jurisdiction and require that all disputes arising out of or relating to the MyPrize service be resolved exclusively through binding arbitration before JAMS under the Federal Arbitration Act ("FAA"). The TOU further provide that "the Arbitrator [has] the exclusive jurisdiction to rule on their own jurisdiction over the Dispute, including any objections with respect to the scope, validity, enforceability, or severability of this Arbitration Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of the Dispute." (Weisgal Decl. ¶7 , Ex. A [TOU § 16.2].)

MyPrize is a free-to-play online sweepstakes and social gaming platform designed solely for amusement and entertainment. (Weisgal Decl. ¶ 3) Users voluntarily choose whether to participate and must create an account and accept the TOUs prior to engaging with any transactional activity on the platform. (Weisgal Decl. ¶ 4.) It does not provide any essential or critical service; users are free to stop playing at any time without consequence. (Weisgal Decl. ¶ 4.) Courts consistently enforce arbitration agreements in voluntary online-service contexts when assent is obtained through clear, conspicuous, and affirmative acceptance. See *Singh v. Adobe Inc.*, No. 3:24-cv-03980-JSC, 2025 WL 2197142, at *4-7 (N.D. Cal. Aug. 1, 2025) (Corley, J.) (enforcing delegation clause formed through online assent); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-58 (9th Cir. 2022); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516-17 (9th Cir. 2023); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1032 (9th Cir. 2016) (enforcing arbitration agreement for voluntary online service); *Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST, 2021 WL

2660433, at *4-5 (N.D. Cal. June 25, 2021) (finding online agreement not unconscionable where users could freely decline service); *Ball v. Skillz Inc.*, No. 2:20-cv-00888, 2020 WL 6685514, at *4 (D. Nev. Nov. 12, 2020) (upholding arbitration agreement for mobile gaming app).

In his Complaint, Plaintiff alleges that the MyPrize platform is an unlawful gambling operation and asserts claims under the Unfair Competition Law, the Consumers Legal Remedies Act, and for restitution, all based on his use of the platform, his purchases of Gold Coins and Sweeps Cash, and the wagers he placed. (Compl. ¶¶ 1-15, 40-97, 107-142.). Each of these claims arises directly from the services Plaintiff used and the Terms he accepted when registering his account and before playing any games.

Plaintiff's effort to void the contract wholesale by claiming MyPrize's platform constitutes illegal gambling (Compl. ¶¶ 85-91) cannot defeat arbitration. Under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006), and the delegation clause here, any challenge to the legality or enforceability of the contract as a whole is for the arbitrator, not the Court. Likewise, Plaintiff's UCL, CLRA, and unjust-enrichment counts (Compl. ¶¶ 107-142) all "arise out of or relate to" his use of the MyPrize service and thus fall squarely within the arbitration clause's scope.

Because Plaintiff accepted the Terms of Use, and because the FAA and the delegation clause require all threshold issues to be decided by the arbitrator, this Court should compel individual arbitration and stay this action pending that arbitration, or in the alternative, dismiss the case in its entirety.

## II. FACTUAL BACKGROUND

### A. MyPrize's Services and Plaintiff's Allegations.

MyPrize operates an online social-gaming platform that allows registered users to play interactive games for amusement and entertainment at no cost. (Weisgal Decl. ¶¶ 2-3.) Users can receive or purchase "Gold Coins" for recreational play and "Sweeps Cash" that may be used in sweepstakes games. (Weisgal Decl. ¶ 5; Compl. ¶¶ 1-15, 40-97.)

Plaintiff alleges that MyPrize's games constitute unlawful gambling because Sweeps Cash can be redeemed for cash prizes, (Compl. ¶¶ 8-12, 60-70.) Plaintiff further claims he played on

the platform "from approximately January 2025 to July 2025," accessed the service from California and lost approximately $500 while using the service. (Compl. ¶ ¶ 92-96.)

However, MyPrize's business records show that Plaintiff did not create an account until March 13, 2025. (Weisgal Decl. ¶ 8.) The account associated with Plaintiff uses the username "blueEvening42," and he could not have accessed or played any MyPrize games through this account before that date. (Weisgal Decl. ¶ 8.) In any event, his claims are based entirely on his use of the MyPrize platform and the same conduct governed by the Terms he accepted during account creation.

### B. Users Must Accept the Terms of Use Before Making Purchases on the Platform

A user cannot make purchases on the MyPrize platform without having a registered account and accepting the Terms of Use. (Weisgal Decl. ¶¶ 5, 8.) MyPrize's system maintains business records documenting each user's acceptance, including the specific version of the Terms of Use accepted and the timestamp. (Weisgal Decl. ¶ 6.) Plaintiff accepted TOU Version 1.3 before engaging in any of the conduct alleged in the Complaint. (Weisgal Decl. ¶ 7.)

#### 1. Assent Process

To create a MyPrize account, users must pass through a mandatory registration screen that displays a written advisal and assent statement. Immediately below the "Sign Up" options (which includes signing up through Google, Twitter, Facebook, Apple, or Email), a click box statement reads: "I am over the age of 18 and agree to the **Terms of Use** (updated as of June 1, 2024) and **Privacy Policy**." (Weisgal Decl. ¶ 6) "**Terms of Use**" and "**Privacy Policy**" appear as conspicuous, bold, and underlined hyperlinks that the user can click to access the full documents. As noted in the terms of use, a user "must read these Terms carefully in their entirety **before checking the box for acceptance of these Terms.**" (Weisgal Decl. ¶ 9, Ex. A [emphasis in original].) The screenshot below is a true and correct copy of the interface presented during

registration:




Regardless of the specific registration path a user takes (Google, Twitter, Facebook, Apple, or Email), a user cannot make any monetary transactions on the platform without first creating an account and agreeing to the Terms of Use. (Weisgal Decl. ¶¶ 5, 8-9.)

The placement of the advisal directly below the sign-up controls provides clear and proximate notice to the Terms of Use.

**2. Hyperlinks and Access to Full Terms**

The clickable hyperlinks on the registration screen lead directly to the full Terms of Use and Privacy Policy. When clicked, the user is shown the complete, operative Terms of Use.

The Terms are intentionally structured to provide users with immediate and prominent notice of the arbitration agreement and class action waiver. The first page of the Terms lists these provisions in highlighted text under an "**IMPORTANT NOTICES**" heading. It explicitly directs users to Section 16 for the arbitration requirement to ensure that a user reviewing the Terms is quickly and easily alerted to the arbitration clause and class action waiver at the outset, rather than having to search through the document to locate them.

The arbitration provision itself is clearly labeled in bold, all-capital text as **"BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER,"** making it conspicuous and accessible for the user.

### 3. System Records Confirming Plaintiff's Assent

MyPrize's systems automatically record each user's assent, capturing the timestamp, IP address, device identifier, and version of the TOU accepted. (Weisgal Decl. ¶ 6.) These secure business records confirm that Plaintiff created his MyPrize account and accepted the operative TOU on March 13, 2025. (Weisgal Decl. ¶ 7.) Plaintiff could not have accessed the platform or participated in any gameplay on his account prior to that date. (Weisgal Decl. ¶ 8.)

## C. The Relevant Terms of Use Contain a Binding Arbitration Agreement and Delegation Clause

TOU Version 1.3, effective January 6, 2025, was the operative contract in effect when Plaintiff created his MyPrize account. It governs all access to and use of the MyPrize.US website, account creation, gameplay, and purchases. On the first page of the TOU, in bold and capitalized print immediately under "**IMPORTANT NOTICES**" is a disclosure of both the nature of the service and the arbitration requirement that binds Plaintiff. Specifically, it reads:

> **THIS WEBSITE AND THE SERVICES PROVIDED HEREIN DO NOT OFFER 'REAL MONEY GAMBLING.' NO ACTUAL MONEY IS REQUIRED TO PLAY, AND THE SERVICE IS INTENDED FOR ENTERTAINMENT PURPOSES ONLY."**
>
> **PLEASE READ THESE TERMS CAREFULLY AND BE AWARE THAT SECTION 16 PROVIDES THAT ALL DISPUTES BETWEEN YOU AND US, WITH LIMITED EXCEPTIONS, WILL BE RESOLVED BY BINDING AND FINAL ARBITRATION, UNLESS YOU OPT OUT WITHIN 30 DAYS OF AGREEING TO THESE TERMS. SECTION 16 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER.** (Weisgal Decl. ¶ 7, Ex. A [MYPRIZE.US - Terms of Use]) (Emphasis in original.)

Immediately following those notices, the Terms include an express opt-out provision allowing users to decline arbitration:

> **OPT-OUT. YOU MAY OPT OUT OF THE ARBITRATION AGREEMENT WITHIN 30 DAYS OF AGREEING TO THESE TERMS IF YOU DID NOT PREVIOUSLY AGREE TO ARBITRATE YOUR CLAIMS WITH US, OR YOU MAY OPT-OUT TO MATERIAL CHANGES TO THE ARBITRATION CLAUSE SINCE YOUR PRIOR AGREEMENT TO ARBITRATE. CHANGES TO THIS ARBITRATION CLAUSE DO NOT PROVIDE YOU WITH A NEW OPPORTUNITY TO OPT OUT OF YOUR PRIOR AGREEMENT TO ARBITRATE WITH US. THEREFORE, BY REJECTING A FUTURE CHANGE, YOU REMAIN BOUND TO**

> **ARBITRATE ANY DISPUTE IN ACCORDANCE WITH THE TERMS AS YOU PREVIOUSLY AGREED.** (Id.)

Section 16 of the TOU, titled "Binding Arbitration Agreement and Class Action Waiver," provides in relevant part:

> **PLEASE READ THIS ARBITRATION & CLASS ACTION WAIVER AGREEMENT (the "Arbitration Agreement") CAREFULLY BECAUSE IT REQUIRES YOU AND MYPRIZE TO ARBITRATE CERTAIN DISPUTES AND CLAIMS AND LIMIT THE MANNER IN WHICH YOU AND MYPRIZE CAN SEEK RELIEF FROM EACH OTHER. THIS ARBITRATION AGREEMENT APPLIES TO ANY CLAIMS YOU OR COMPANY CURRENTLY POSSESS AND ANY CLAIMS THE PARTIES MAY RAISE IN THE FUTURE. WHILE YOU MUST AGREE TO THESE TERMS OF USE IN ORDER TO USE THE SERVICES, IF YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION PROVISION IN CONNECTION WITH YOUR USE OF OUR SERVICE, THERE IS AN OPTION, DESCRIBED BELOW IN SECTION 16.12, TO OPT OUT OF THE ARBITRATION PROVISIONS. THE OPTION TO OPT-OUT IS TIME-LIMITED TO THIRTY (30) DAYS OF ENTERING THIS ARBITRATION AGREEMENT AND REQUIRES YOUR IMMEDIATE ATTENTION…** (Id.)

Section 16.2 ("Scope of Agreement to Arbitrate") covers "any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase, transaction, access to, or use of the Platform or Service, or to this Arbitration Agreement, the TOU, or Privacy Policy." (Id.) It further delegates to the arbitrator "the exclusive jurisdiction to rule on their own jurisdiction … including the scope, validity, enforceability, or severability of this Arbitration Agreement."

Section 16.9 establishes arbitration before JAMS under its Comprehensive Arbitration Rules and Procedures, designating Wilmington, Delaware as the default venue and limiting a user's filing fee to $250. (Weisgal Decl. ¶ 7, Ex. A [§§ 16.9, 16.9.5, 16.9.6].) It authorizes dispositive motions (Id., § 16.9.4), requires a reasoned written award (Id., § 16.9.8), protects confidentiality (Id., § 16.9.9), and allows appeal under JAMS's optional procedures (Id., § 16.9.11).

Section 16.10 introduces a batch-arbitration mechanism for efficiently resolving groups of similar claims.

Sections 16.12 and 16.13 outline the opt-out process, permitting users to decline

arbitration by emailing Support@MyPrize.us with the subject line "Opt-Out" within thirty days of entering the agreement

Section 16.15, under "**WAIVER OF CLASS RELIEF AND COLLECTIVE ACTION**," it confirms that arbitration and litigation may proceed only on an individual basis:

> **YOU MAY ONLY ARBITRATE OR LITIGATE ON AN INDIVIDUAL CLAIMS BASIS ONLY AND FOR YOUR OWN LOSSES ONLY…. YOU AND MYPRIZE.US ARE EACH WAIVING RESPECTIVE RIGHTS TO PARTICIPATE IN A CLASS ACTION**. (Id.)

Section 16.16 ensures severability, providing that any invalid portion of the arbitration clause is replaced with an enforceable provision consistent with the parties' intent.

These provisions collectively create a comprehensive, conspicuous, and procedurally fair arbitration framework that make it clear that: 1) all disputes arising out of or relating to Plaintiff's use of MyPrize's services are governed by the Federal Arbitration Act ("FAA") and Delaware law; and 2) must be resolved by individual arbitration before JAMS, with the arbitrator holding exclusive authority to determine all issues of arbitrability.

### D. Plaintiff's Claims Arise from the Service He Received and the Terms of Use He Accepted

All of Plaintiff's allegations arise directly from his registration for and use of the MyPrize platform, which is governed by the TOU he accepted when registering his account and continuing to use the services. (Compl. ¶¶ 1-15, 40-97, 85-91, 107-142.) Because Plaintiff's claims all "arise out of or relate to" his use of the MyPrize service and because the parties expressly agreed that all such disputes must be arbitrated under the FAA before JAMS, the arbitration agreement encompasses every cause of action asserted in the Complaint. The FAA therefore requires that the Court compel arbitration and stay or dismiss this action pending its completion.

## III. LEGAL STANDARD

The Arbitration Agreement is governed by the Federal Arbitration Act ("FAA"), which provides that a written provision in a contract involving commerce to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies a strong federal policy

favoring arbitration and places arbitration agreements "upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

Arbitration agreements must therefore be "rigorously enforced according to their terms." *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013). This policy extends to individualized arbitration proceedings. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). When a contract contains an arbitration clause, there is a presumption of arbitrability, and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In the Ninth Circuit, the Court's role on a motion to compel arbitration is limited to two questions: (1) whether a valid agreement to arbitrate exists and (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party resisting arbitration bears the burden of proving that the agreement is invalid or inapplicable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). If both requirements are met, the FAA "leaves no place for the exercise of discretion," and the Court must compel arbitration and stay the proceedings. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. §§ 3-4.

Finally, where the arbitration clause contains a delegation provision, as it does in MyPrize, assigning questions of arbitrability or enforceability to the arbitrator, courts must honor that delegation unless the provision itself is specifically challenged. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529-30 (2019).

## IV. ARGUMENT

### A. Delaware Law and the FAA Govern

MyPrize's TOU, including the binding arbitration and class-action-waiver provisions contained in Section 16, are expressly governed by Delaware law and the Federal Arbitration Act ("FAA"). (Weisgal Decl. ¶ 7, Ex. A [TOU § 16.8].) Section 16.8 provides that:

> While the Federal Arbitration Act shall control, to the extent the law of any state is applied or considered with respect to issues bearing upon the enforceability or scope of this Arbitration Agreement, the parties agree that the law of the State of Delaware shall exclusively apply, notwithstanding any consideration or application of choice of law or conflicts of law principles."
> (Id.)

Under California's choice-of-law rules, federal courts apply the forum state's choice-of-law principles to determine the controlling substantive law. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). Those principles favor enforcement of contractual choice-of-law provisions unless (1) the chosen state has no substantial relationship to the parties or the transaction, or (2) applying that law would be contrary to a fundamental policy of a state with a materially greater interest. *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal.4th 459, 464-65 (1992); *Prof'l Collection Consultants v. Lauron*, 8 Cal.App.5th 958, 973 (2017).

Here, Delaware has a substantial relationship to this dispute. MyPrize is incorporated and headquartered in Delaware, and the arbitration clause mandates arbitration before JAMS in Wilmington, Delaware. (Weisgal Decl. ¶ 7, Ex. A [TOU § 16.9.5].) Federal courts in this Circuit routinely honor such provisions unless overriding public-policy concerns are present, which they are not here. See *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). Moreover, Delaware law strongly favors arbitration, providing that "any doubt as to arbitrability is to be resolved in favor of arbitration." *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).

Accordingly, Delaware law and the FAA together govern the interpretation and enforcement of MyPrize's arbitration clause and reinforce its validity and scope.

The Central District of California recently granted a nearly identical motion to compel arbitration brought by *Fliff, Inc.*, which operates a comparable sweepstakes-based gaming platform governed by Pennsylvania law. *See Bishoy Nessim v. Fliff, Inc.*, No. 5:23-cv-01048-SSS-SHK (C.D. Cal. Jan. 5, 2024) (order granting motion to compel arbitration). The court enforced an arbitration clause materially similar to MyPrize's in that it required individual arbitration under the FAA and Pennsylvania law. The court rejected challenges based on the *McGill* Rule and unconscionability. *Id*. at 14-20.

### B. The Arbitration Clause Is Valid and Enforceable

#### 1. The FAA Requires Enforcement

Under the FAA, a valid arbitration agreement must be enforced according to its terms. 9 U.S.C. §§ 2-4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Once the court finds (1) a valid agreement and (2) that the agreement covers the dispute, arbitration is mandatory. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Both requirements are satisfied here. Plaintiff accepted the TOU and Sweepstake rules when registering for the MyPrize platform. Those Terms contain a binding, mutual arbitration provision governed by the FAA and administered by JAMS in Wilmington, Delaware. (TOU § 16.9.5.) Plaintiff's claims all arise out of his use of the platform and alleged in-game purchases and fall squarely within that agreement. (Compl. ¶¶ 51-66, 92-96, 107-142.)

Courts must "rigorously enforce arbitration agreements according to their terms," including terms requiring individualized arbitration. *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). Because Plaintiff entered a valid arbitration agreement and his claims are covered by its plain language, the Court must compel arbitration and stay or dismiss the proceedings pending its outcome.

#### 2. The Arbitrator Decides All Issues of Enforceability or Scope

The Supreme Court has made clear that when an agreement delegates questions of arbitrability to the arbitrator, courts must honor that delegation unless it is specifically challenged. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529-30 (2019).

MyPrize's TOU expressly delegate all issues of enforceability: "You and MyPrize agree and delegate to the Arbitrator the exclusive jurisdiction to rule on their own jurisdiction over the Dispute, including any objections with respect to the scope, validity, enforceability, or severability of this Arbitration Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of the Dispute." (Weisgal Decl. ¶¶ 7, Ex. A [TOU § 16.2].)

This language unmistakably delegates all threshold questions of arbitrability to the arbitrator. *Rent-A-Center*, 561 U.S. at 70-72. Plaintiff has not specifically challenged this delegation provision, and his allegations that MyPrize's operations constitute illegal gambling or render the contract void (Compl. ¶¶ 85-91) are directed at the contract as a whole, not the arbitration clause itself. Under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006), and *Singh v. Adobe Inc.*, No. 3:24-cv-03980-JSC, 2025 WL 2197142, at *6 (N.D. Cal. Aug. 1, 2025), such challenges must be resolved by the arbitrator.

Accordingly, the delegation clause requires that all issues of enforceability, scope, and arbitrability be decided by the arbitrator.

**3. The Arbitration Agreement Is Not Procedurally Unconscionable**

Plaintiff may argue that the arbitration provision is unconscionable but that fails. Under both Delaware and California law, procedural unconscionability requires oppression or surprise stemming from unequal bargaining power. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80-81 (Del. 2006). Neither element exists here.

Plaintiff voluntarily registered for MyPrize's recreational, entertainment-based service, and may stop services at any time without penalty. Courts consistently hold that online gaming and social-app agreements presented to consumers are not procedurally unconscionable because participation is optional and consumers can choose among numerous market alternatives. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1029 (9th Cir. 2016) (finding only minimal procedural unconscionability in optional online service); *Ball v. Skillz Inc.*, 2020 WL 6685514, at *4 (D. Nev. Nov. 12 2020) (same); *Fliff* (C.D. Cal. Jan. 5 2024) (finding minimal procedural unconscionability where the contract involved a nonessential recreational mobile sports-betting service and the plaintiff had reasonable market alternatives).

The arbitration agreement was disclosed conspicuously on the first page of the TOU under the "**IMPORTANT NOTICES**" heading, which advises users that Section 16 contains the binding arbitration and class-action-waiver provisions and highlights the thirty-day opt-out right. Users must have a checked box acknowledging acceptance before creating an account or using

any service, which Courts hold is adequate notice and assent. *Singh v. Adobe Inc.*, No. 3:24-cv-03980-JSC, 2025 WL 2197142, at *4-7 (N.D. Cal. Aug. 1, 2025); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-58 (9th Cir. 2022); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516-17 (9th Cir. 2023).

Further, the TOU expressly gives users a thirty-day window to opt out of the arbitration provision with the subject "Opt-Out." (Weisgal Decl. ¶ 7, Ex. A [TOU §§ 16.12-16.13].) An opt-out clause allowing users to reject arbitration within a defined period eliminates procedural unconscionability. *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1059 (9th Cir. 2013) (finding arbitration agreement not adhesive where opt-out option provided.)

The arbitration agreement also limits users' filing fees to $250, assigning the arbitration to JAMS (a neutral and well-respected administrator), and allowing remote participation or venue in Wilmington, Delaware, or at the user's domicile. (Weisgal Decl. ¶ 7, Ex. A [TOU §§ 16.9.5-16.9.6].) Such provisions reinforce the procedural reasonableness of the agreement. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245-46 (2016).

Accordingly, there is no procedural unconscionability here. Users are given clear, front-page notice of the arbitration clause, a meaningful opt-out right, a neutral forum, capped costs, and full opportunity to decline participation altogether.

**4. The Arbitration Agreement Is Not Substantively Unconscionable**

Substantive unconscionability examines whether contract terms are overly harsh or one-sided. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013). Nothing in MyPrize's arbitration provision meets that standard.

The arbitration clause is mutual and limited to individual proceedings: both parties must arbitrate "any past, pending, or future" dispute "arising out of or relating to any purchase, transaction, access to, or use of the [MyPrize] Service," and the agreement requires claims to proceed on an individual basis, which is fully enforceable under the FAA. (TOU, §§ 16.2, 16.9, 16.15); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018).

The clause preserves all remedies: the arbitrator is "authorized to award any remedies, including equitable or injunctive relief, that would be available in an individual lawsuit," and

must issue a reasoned written award. (TOU, §§ 16.9.7, 16.9.8.)

The forum and cost terms are reasonable. As discussed, arbitration is administered by JAMS, allows forum, and caps the consumer's filing fee at $250. (TOU, §§ 16.9.5, 16.9.6.) *Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1245-46 (2016).

Finally, public-injunction arguments do not change the analysis: any *McGill* argument goes to scope/enforceability and is for the arbitration. (TOU, § 16.2.) If any non-waivable public-injunction claim must proceed in court, the severability clause allows that issue to be handled separately while arbitration proceeds on all other claims. (TOU, § 16.16.) *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009-10 (9th Cir. 2023).

The MyPrize arbitration clause is clear, mutual, and reasonable. It is not substantively unconscionability under either California or Delaware law.

**5. Any Illegality Allegations Do Not Render the Arbitration Clause Unenforceable**

Any claims that MyPrize's platform constitutes illegal gambling do not affect the enforceability of the arbitration clause. Under binding precedent, challenges to the legality of the underlying contract are for the arbitrator to decide, not the court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010).

In *Fliff* the court heard the same argument regarding illegal gambling and held that such allegations go to the legality of the contract as a whole, not to the validity of the arbitration clause. Therefore, the court reasoned, this is a question for the arbitrator. (*Fliff*, supra, Order at 2, 8-10, 20.)

The same reasoning applies here. Plaintiff's gambling allegations concern the legality of MyPrize's overall business model, not the arbitration agreement itself. Because the clause is governed by the FAA and contains a delegation clause granting the arbitrator authority to decide issues of "applicability, enforceability, or formation," any argument that the contract is illegal must be resolved in arbitration.

### C. Plaintiff's Claims Fall within the Scope of the Arbitration Agreement

The arbitration clause covers any dispute "arising out of or relating to any purchase, transaction, access to, or use of the Platform or Service." (TOU, § 16.2.) Courts construe "arising out of or relating to" language broadly to encompass all disputes connected to the contract or transaction at issue. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999). Here, Plaintiff's claims arise entirely from his use of the MyPrize platform and alleged transactions within it, which are governed by the clause. (Compl. ¶¶ 51-66, 92-96, 107-142.). Accordingly, all of Plaintiff's claims fall within the scope of the arbitration agreement.

### D. The Court Should Stay or Dismiss this Action Pending Arbitration

Because a valid agreement exists and encompasses Plaintiff's claims, the FAA requires the Court to compel arbitration and stay proceedings. 9 U.S.C. § 3; *Dean Witter*, 470 U.S. at 218. MyPrize respectfully requests a stay under § 3; in the alternative, dismissal is appropriate when all claims are subject to arbitration. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014).

## V. CONCLUSION

For the foregoing reasons, the Court should grant MyPrize's Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2-4 and either stay or dismiss this action pending the outcome of arbitration.

Dated: November 24, 2025

**DUANE MORRIS LLP**

By: /s/ *Daniel D. Wall*
Sean Patterson
Daniel D. Wall
Attorneys for Defendant
MY TECHNOLOGY, INC., d/b/a
MYPRIZE.US