**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330990)
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAYMOND MIRZAYAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>MY TECHNOLOGY, INC. d/b/a MYPRIZE.US,<br><br>                    Defendant. | Case No. 3:25-cv-07313-JSC<br><br>**OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Dept: Courtroom 8, 19th Floor<br>Judge: Judge Jacqueline Scott Corley<br>Date: March 5, 2026<br>Time: 10:00 a.m.<br><br>Trial Date: None Set<br>Date Class Action Filed: August 8, 2025 |

OPPOSITION TO MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................. 2

    A.   MyPrize's Illegal Gambling Operations in California. ................................... 2

    B.   MyPrize's Dual-Currency System. ................................................................ 3

    C.   Plaintiff's Injuries Suffered as a Result of MyPrize's Platform. .................... 4

    D.   Plaintiff Did Not Agree to Arbitrate His Claims ............................................ 4

III.  LEGAL STANDARD ............................................................................................ 4

IV.   ARGUMENT .......................................................................................................... 5

    A.   The Terms Containing the Arbitration and Delegation Clauses are Void. ....... 5

    B.   MyPrize Failed to Prove Plaintiff Agreed to Arbitration. ............................. 9

    C.   California Law Controls ................................................................................ 12

    D.   The Terms are Unconscionable. .................................................................... 14

        i.    The Arbitration Agreement is Procedurally Unconscionable. ................... 14

        ii.   The Arbitration Agreement is Substantively Unconscionable. ................. 16

        iii.  The Public Injunctive Relief Waiver is Unconscionable. ......................... 22

        iv.   There is no Clear and Unmistakable Delegation. ..................................... 22

        v.    The Court Should Not Sever the Aforementioned Provisions. .................. 23

    E.   The Question of Whether a Valid Agreement to Arbitration Exists Must be Decided by this Court, not an Arbitrator. ...................................................... 24

V.    CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Amaya v. Spark Energy Gas, LLC*,

    No. 15-cv-02326-JSW, 2016 WL 1410755 (N.D. Cal. Apr. 11, 2016)................................5

*Armendariz v. Foundation Health Psychcare Services, Inc.*,

    6 P.3d 669, 693 (Cal. 2000) ..............................................................17, 18, 20, 23

*AT&T Mobility LLC v. Concepcion*,

    563 U.S. 333 (2011)...............................................................................14

*Belyea v. GreenSky, Inc.*,

    No. 20-cv-01693-JSC, 2020 WL 3618959 (N.D. Cal. July 2, 2020)....................................25

*Berman v. Freedom Fin. Network, LLC*,

    30 F.4th 849 (9th Cir. 2022) .........................................................................9, 10

*Brown v. Dow Chem. Co.*,

    No. 18-cv-07098-MMC, 2019 WL 484211 (N.D. Cal. Feb. 7, 2019)...................................19

*Buckeye Check Cashing, Inc. v. Cardegna*,

    546 U.S. 440 (2006).................................................................................8

*Carnival Leisure Indus., Ltd. v. Aubin*,

    938 F.2d 624 (5th Cir. 1991) .........................................................................13

*Chabolla v. ClassPass Inc.*,

    129 F.4th 1147 (9th Cir. 2025) .......................................................................10

*Chavarria v. Ralphs Grocery Co.*,

    733 F.3d 916 (9th Cir. 2013) .........................................................................15

*Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*,

    617 S.W.3d 792 (Ky. 2020)...........................................................................13

*Dietrich v. Boeing Co.*,

    14 F.4th 1089, 1095 (9th Cir. 2021) ..................................................................21

*Eiess v. USAA Fed. Sav. Bank*,
　　404 F. Supp. 3d 1240 (N.D. Cal. 2019) ...................................................25

*Estate of Molino*,
　　81 Cal. Rptr. 3d 512 (Ct. App. 2008) ................................................6, 9

*First Options of Chicago, Inc. v. Kaplan*,
　　514 U.S. 938 (1995) ...............................................................................24

*Franklin v. Nat C. Goldstone Agency*,
　　204 P.2d 37 (Ct. App. 1949) .....................................................................6

*Franz v. Hyundai Motor Am.*,
　　No. 8:23-cv-01640-NS-ADS, 2024 WL 176227 (C.D. Cal. Jan. 12, 2024) ...........................7

*Garcia v. Stoneledge Furniture LLC*,
　　321 Cal. Rptr. 3d 181 (Ct. App. 2024) ....................................................7

*Ghazizadeh v. Coursera, Inc.*,
　　737 F. Supp. 3d 911 (N.D. Cal. 2024) ...................................................11

*Godun v. JustAnswer LLC*,
　　135 F.4th 699 (9th Cir. 2025) .................................................................10

*Gostev v. Skillz Platform, Inc.*,
　　305 Cal. Rptr. 3d 248 (Ct. App. 2023) ..................................................18

*Granite Rock Co. v. Int'l. Brotherhood of Teamsters*,
　　561 U.S. 287 (2010) .................................................................................7

*Hageman v. Hyundai Motor Am.*,
　　758 F. Supp. 3d 1194 (C.D. Cal. 2024) .................................................23

*Hartley v. Super. Ct.*,
　　196 Cal. App. 4th 1249 (2011) ...............................................................23

*Hotels Nevada, LLC v. Bridge Banc, LLC*,
　　30 Cal. Rptr. 3d 903 (Ct. App. 2005) .......................................................6

OPPOSITION TO MOTION TO COMPEL ARBITRATION

*In re Baum*,

    386 B.R. 649 (Bankr. N.D. Ohio 2008) ................................................................13

*Ingle v. Circuit City Stores, Inc.*,

    328 F.3d 1165 (9th Cir. 2003) ..........................................................................17

*Jialu Wu v. iTalk Glob. Commc'ns, Inc.*,

    No. CV 20-7150 PSG (PJWx), 2020 WL 8461696 (C.D. Cal. Oct. 21, 2020) ....................12

*Johnson v. Cont'l Fin. Co., LLC*,

    131 F.4th 169 (4th Cir. 2025) ............................................................................7

*Johnson v. Stoneridge Creek Pleasanton CCRC LLC*,

    No. A-165800, 2023 WL 7125117 (Cal. Ct. App. Oct. 30, 2023) ........................16

*Kilgore v. KeyBank, Nat'l Ass'n*,

    718 F.3d 1052, 1058 (9th Cir. 2013) ................................................................14

*King Int'l Corp. v. Voloshin*,

    366 A.2d 1172 (Conn. Super. Ct. 1976) ..........................................................13

*Knutson v. Sirius XM Radio Inc.*,

    771 F.3d 559 (9th Cir. 2014) ..............................................................................9

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,

    845 F.3d 979 (9th Cir. 2017) ............................................................................25

*Lee v. Plex, Inc.*,

    773 F. Supp. 3d 755 (N.D. Cal. 2025) ............................................................11

*Lhotka v. Geographic Expeditions, Inc.*,

    104 Cal. Rptr. 3d 844 (Ct. App. 2010) ............................................................19

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,

    363 F.3d 1010 (9th Cir. 2004) ............................................................................4

*Lim v. TForce Logistics, LLC*,

    8 F.4th 992, 1001 (9th Cir. 2021) ....................................................................17

*Loving & Evans v. Blick,*

    204 P.2d 23 (Cal. 1949) ............................................................................................... 7

*MacClelland v. Cellco Partnership,*

    609 F. Supp. 3d 1024 (N.D. Cal. 2022) .............................................. 16, 20, 21, 24

*Macon County Greyhound Park, Inc. v. Hoffman,*

    226 So. 3d 152 (Ala. 2016) .......................................................................................... 8

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*

    514 U.S. 52 (1995) ....................................................................................................... 18

*Mattei v. Hopper,*

    51 Cal. 2d 119 (1958) ................................................................................................. 17

*McArdle v. AT&T Mobility LLC,*

    772 F. App'x 575 (9th Cir. 2019) ............................................................................. 22

*McGill v. Citibank, N.A.,*

    393 P.3d 85 (Cal. 2017) ......................................................................................... 2, 22

*Moua v. Optum Servs., Inc.,*

    320 F. Supp. 3d 1109 (C.D. Cal. 2018) ............................................................ 17, 18

*Nagrampa v. MailCoups, Inc,*

    469 F.3d 1257, 1281 (9th Cir. 2006) ....................................................................... 15

*Nat'l Fed'n of the Blind v. The Container Store, Inc.,*

    904 F.3d 70 (1st Cir. 2018) ........................................................................................ 18

*Nedlloyd Lines B.V. v. Superior Court,*

    3 Cal. 4th 459 (1992) .................................................................................................. 12

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.,*

    292 Cal. Rptr. 3d 740 (Ct. App. 2022) ................................................................... 14

*Newton v. Am. Debt Servs., Inc.,*

    539 App'x 692 (9th Cir. 2013) .................................................................................. 15

OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Newton v. Am. Debt Servs., Inc.,*

    854 F.Supp.2d 712 (N.D. Cal. 2012) ...................................................................15, 20

*Nguyen v. Barnes & Noble Inc.,*

    763 F.3d 1171 (9th Cir. 2014) ...................................................................................5

*Norcia v. Samsung Telecomms. Am., LLC,*

    845 F.3d 1279 (9th Cir. 2017) ...............................................................................5, 9

*Oberstein v. Live Nation Ent., Inc.,*

    60 F.4th 505 (9th Cir. 2023) ................................................................................9, 10

*OTO, L.L.C. v. Kho,*

    447 P.3d 680, 690 (Cal. 2019) .............................................................................14, 17

*Parada v. Super. Ct.,*

    176 Cal. App. 4th 1554 (2009) ...............................................................................23

*Peleg v. Neiman Marcus Group, Inc.,*

    204 Cal. App. 4th 1425 (2012) .............................................................................12, 17

*Portugal v. High 5 Entertainment, LLC,*

    No. CGC-24-621047 (Cal. Super. Ct. Aug. 28, 2025)......................................16, 19

*Poublon v. C.H. Robinson Co.,*

    846 F.3d 1251, 1261 (9th Cir. 2017) ......................................................................21

*Presson v. Alamo Intermediate II Holdings, LLC,*

    No. 24-CV-170 (ER), 2025 WL 692123 (S.D.N.Y. Mar. 4, 2025) ........................11

*Quamina v. JustAnswer LLC,*

    721 F. Supp. 3d 1026 (N.D. Cal. 2024) .................................................................11

*Rios v. HRB Digital LLC,*

    No. 25-cv-03530-EMC, 2025 WL 3003768 (N.D. Cal. 2025).............................15

*Rojas v. Gosmith, Inc.,*

    2020 WL 831585 (N.D. Ind. Feb. 20, 2020)..........................................................11

OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Rosenthal v. Great Western Fin. Securities Corp.*,

 926 P.2d 1061 (Cal. 1996) ................................................................................8, 9

*Ruiz v. Affinity Logistics Corp.*,

 667 F.3d 1318 (9th Cir. 2012) ...............................................................................12

*Sanchez v. Maggy London Int'l Ltd.*,

 No. 3:25-CV-02107-H-JLB, 2025 WL 3097931 (S.D. Cal. Nov. 6, 2025)..........................11

*Schenck v. Hirshfeld*,

 22 Cal. App. 709 (Ct. App. 2d Dist. 1913) ...............................................................6

*Sellers v. JustAnswer LLC*,

 289 Cal. Rptr. 3d 1 (Ct. App. 2021).........................................................................9

*Shephard v. Lerner*,

 6 Cal. Rptr. 433 (Ct. App. 1960)..............................................................................8

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*,

 425 P.3d 1 (Cal. 2018) ..........................................................................................7

*Smith v. Folsom Invs., L.P.*,

 No. C097549, 2023 WL 8794888 (Cal. Ct. App. Dec. 20, 2023) .................................16

*Sonic-Calabasas A, Inc. v. Moreno*,

 311 P.3d 184, 202 (Cal. 2013) ...............................................................................17

*Swain v. LaserAway Med. Grp., Inc.*,

 270 Cal. Rptr. 3d 786 (Ct. App. 2020).....................................................................16

*Tak Chun Gaming Promotion Co. Ltd. v. Long*,

 314 Cal. Rptr. 3d 890 (Ct. App. 2023)......................................................................6

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,

 925 F.2d 1136 (9th Cir. 1991) .................................................................................5

*Timney v. Lin*,

 131 Cal. Rptr. 2d 387 (Ct. App. 2003)......................................................................5

*Ting v. AT&T,*

    319 F.3d 1126, 1148 (9th Cir. 2003) ...................................................................15

*Ulbrich v. Overstock.com, Inc.,*

    887 F. Supp. 2d 924 (N.D. Cal. 2012) ................................................................12

*Vasquez v. Cebridge Telecom CA, LLC,*

    569 F. Supp. 3d 1016, 1029 (N.D. Cal. 2021) ....................................................22

*Ward v. Crow Vote LLC,*

    No. SACV 21-cv-01110-JVS (DFMx), 2021 WL 5927803 (C.D. Cal. Oct. 7, 2021) .......................................................................................................................7

*Wherry v. Award, Inc.,*

    123 Cal. Rptr. 3d 1 (Ct. App. 2011) ...................................................................19

*Woods v. Sirius XM Radio Inc.,*

    No. 24-cv-03799-WHO, 2025 WL 1918672 (N.D. Cal. July 11, 2025).........................4

*XRI Inv. Hldgs. LLC v. Holifield,*

    283 A.3d 581 (Del. Ch. 2022)..............................................................................14

*Zaborowski v. MHN Gov't Servs., Inc.,*

    936 F. Supp. 2d 1145 (N.D. Cal. 2013), *aff'd*, 601 F. App'x 461 (9th Cir. 2014) ...............20

*Zounds Hearing Franchising, LLC v. Bower,*

    2017 WL 4399487 (D. Ariz. Sept. 19, 2017)......................................................13

**STATUTES**

9 U.S.C. § 4...............................................................................................................7

Cal. Bus. & Prof. Code § 17208 ............................................................................19

Cal. Civ. Code § 1598.............................................................................................5

Cal. Civ. Code § 1608.........................................................................................5, 8

Cal. Civ. Code § 1667.............................................................................................5

Cal. Civ. Code § 1780...........................................................................................20

Cal. Civ. Code § 1783 .................................................................................................19

Cal. Penal Code § 330 ..................................................................................................3

Cal. Penal Code § 337 ................................................................................................13

Cal. Penal Code § 3301 ................................................................................................6

**TREATISES**

21 Williston on Contracts (4th ed.) ..............................................................................8

OPPOSITION TO MOTION TO COMPEL ARBITRATION

Plaintiff Raymond Mirzayan ("Plaintiff") hereby responds in opposition to Defendant My Technology, Inc. d/b/a MyPrize.US's ("Defendant" or "MyPrize") Motion for Order Compelling Arbitration ("Motion").

## I.    INTRODUCTION

For years, MyPrize told consumers and the public that its online "social" casino games were lawful in California. In reality, MyPrize offered unlicensed gambling through its chance-based casino games and dual-currency system, violating multiple California statutes and common law. Indeed, in 2025, California expressly deemed such online sweepstakes unlawful under state law. Through this unlawful conduct, MyPrize has unjustly enriched itself to the tune of millions of dollars.

MyPrize now attempts to shield itself from accountability through contractual terms of service ("Terms") deliberately drafted to preclude bilateral adjudication of its customers' claims. Relying on those purported Terms, MyPrize moves to compel arbitration. Its Motion, however, fails for several independent and dispositive reasons.

First, no valid contract was ever formed because MyPrize cannot establish the existence of valid consideration. The only consideration was access to an illegal gambling platform—an exchange that violates multiple provisions of California law and contract formation principles. A contract based on illegal consideration is void and cannot create enforceable obligations, including any arbitration clause contained within it.

Second, MyPrize has failed to meet its burden to establish that Plaintiff had unambiguously manifested assent to arbitrate. The registration screen did not clearly link any specific affirmative action to contractual acceptance and the "I agree" checkbox was prechecked. As a result, Plaintiff did not affirmatively assent to arbitration.

Third, no enforceable contract was created because the Terms are illusory. MyPrize purported to give itself the right to modify the Terms at any time without notice to Plaintiff, but unilateral modification clauses render contracts illusory under California law.

Fourth, even if this Court finds a contract was formed, the Terms are unconscionable under generally applicable contract defenses, and thus void and unenforceable. The Terms are procedurally unconscionable because they are an oppressive contract of adhesion, containing unreasonable terms

that were not reasonably communicated to Plaintiff. The Terms are substantively unconscionable because they contain (1) a waiver of nearly all damages, including punitive damages, which are available under California's Consumer Legal Remedies Act, (2) a one-year statute of limitations on all claims despite that Plaintiff is suing under California consumer protection statutes with limitations periods ranging from three to four years, (3) an unconscionable and one-sided mass arbitration provision, which will delay consumers like Plaintiff from obtaining relief, and deter them from adjudicating their claims, (4) a one-sided indemnification clause, and (5) multiple clauses that lack mutuality. These unconscionable provisions so sufficiently permeate MyPrize's Terms that the Court should disregard the dispute resolution terms in their entirety.

Fifth, even if Plaintiff was given reasonable notice of the arbitration provision therein, it is invalid because it impermissibly deprives Plaintiff of his right to seek public injunctive relief in any forum and thereby runs afoul of *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017).

For any and all of these reasons, the Motion should be denied in full.

## II.    FACTUAL BACKGROUND

### A.  MyPrize's Illegal Gambling Operations in California.

Defendant owns and operates one of the most popular and casino and sweepstakes gaming websites on the planet, available at www.myprize.us. ECF 1, Complaint ("Compl.") ¶ 2. MyPrize offers consumers the ability to access thousands of casino-style games, including jackpots and slots, among many others (the "Chance Games").  *Id.* ¶ 3. The Chance Games are, undoubtedly, games of chance, as they are gambling, and are no different than if they were played in a Las Vegas casino. *Id.* ¶ 4. Their outcomes are determined primarily, if not exclusively, by randomization—rendering them indistinguishable from the game found in traditional, brick-and-mortar casinos. *Id.*

MyPrize advertises itself as a "social casino" that is "always free" and "free to play" in order to avoid gambling  regulations and reassure potential players that it offers casino-style games purely for entertainment, without real-money stakes. *Id.*  ¶¶ 5, 48. This false representation misleads consumers, including Plaintiff, into believing that they are participating in harmless gameplay rather than actual-money gambling. *Id.* Virtual gambling is highly addictive and strictly regulated in California. *Id.* ¶ 12.  By law, these games can only be offered by licensed operators in licensed,

physical locations. *Id.* Defendant's operations flout these legal requirements by providing unlicensed gambling services to California residents via its games. *Id*. In California, it is illegal to operate and offer online gambling and sweepstakes casinos, including, like here, websites that offer slot machines, jackpots, and poker. *See* generally Cal. Penal Code §§ 330 *et. seq. Id.* ¶ 47. In this regard, Defendant violates California's fundamental and deep-rooted public policy against gambling *Id*.

As a result of Defendant's misconduct, Plaintiff alleges claims for violation of California Unfair Competition Law ("UCL"), violation of the California Legal Remedies Act ("CLRA"), and Unjust Enrichment, *See id*. Counts I, II, III.

**B. MyPrize's Dual-Currency System.**

MyPrize employs a dual-currency system designed to obscure that it operates as a real-money gambling platform. *Id.* ¶ 8. MyPrize bundles "Gold Coins"—characterized as nonredeemable tokens used solely for casual gameplay—with "Sweeps Cash" which can be wagered on casino-style games and redeemed for real money at a fixed rate of one U.S. Dollar per one Sweeps Cash. *Id*. ¶¶ 9–11, 60. This structure exposes MyPrize's true business model: facilitating real-money gambling under the guise of a "social casino." *Id.* ¶ 9.

The transaction mechanics on MyPrize's platform further confirm that the true product being sold is Sweeps Cash, not Gold Coins. *Id.* ¶ 11. For example, a $20 purchase yields 20.00 Sweeps Cash and 20,000 Gold Coins; a $50 purchase yields 50.00 Sweeps Cash and 50,000 Gold Coins; and so on. *Id.* ¶ 61. Users who wager Sweeps Cash are risking something of value in games of chance for the opportunity to win additional sweeps Cash and redeem it for real money. *Id.* ¶ 62. By offering Sweeps Cash that can be wagered and redeemed for cash, MyPrize operates an unlicensed and unlawful online casino in violation of California's gambling laws. *Id.* ¶ 65.

In January 2026, California Penal Code § 337 was expressly amended to capture precisely this type of dual-currency scheme. The statute defines "indirect consideration" as:

> a coin, token, or other representation of value that may be exchanged a prize, award, cash, or cash equivalents or a chance to win a prize, award, cash, or cash equivalents. Indirect consideration is provided for free through a promotion, bonus, or with the purchase of a related product, service, or activity. As used in this paragraph, "related product, service, or activity" includes a coin, token, or other representation of value that may be used for direct consideration.

MyPrize's Sweeps Cash falls squarely within this definition.

### C.  Plaintiff's Injuries Suffered as a Result of MyPrize's Platform.

Plaintiff, and the majority of MyPrize's players, routinely buy additional coin bundles after depleting their Sweeps Cash, even when they retain a surplus of Gold Coins. *Id.* ¶ 63. Plaintiff played casino-style games of chance on MyPrize's platform, including slots, and in total wagered and lost approximately $500.00 in real-world currency while attempting to win real cash prizes. *Id.* ¶¶ 93–95.

### D.  Plaintiff Did Not Agree to Arbitrate His Claims.

When Plaintiff created his MyPrize account, the purported Terms in effect were the TOU Version 1.3. *See* ECF 17-1, Declaration of Bryan Weisgal ("Weisgal Decl."), ¶ 7 and Ex. A thereto. Plaintiff, however, attests he never saw, reviewed, or affirmatively agreed to any Terms when registering and was never made aware that registering an account would subject him to any arbitration provision. *See* Declaration of Raymond Mirzayan ("Mirzayan Decl."), attached hereto as Exhibit A, at ¶¶ 3–8.  MyPrize submits a screenshot of the registration interface, which includes sign-up options (Google, Apple, Facebook, Twitter, or email) and a statement reading: "I am over the age of 18 and agree to the Terms of Use (updated as of June 1, 2024) and Privacy Policy," with "Terms of Use" and "Privacy Policy" displayed as hyperlinks. Weisgal Decl. ¶ 6 & Ex. C. The screenshot also shows a checkbox next to the statement that is prechecked by default, meaning Plaintiff did not personally check any box to indicate agreement; MyPrize did so automatically. *Id.*, Ex. C; Miryzayan Decl. ¶ 6. Thus, Plaintiff never agreed to arbitrate any of his disputes with MyPrize.

### III.    LEGAL STANDARD

"The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 et seq." *Woods v. Sirius XM Radio Inc*., No. 24-cv-03799-WHO, 2025 WL 1918672, at *4 (N.D. Cal. July 11, 2025). Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The burden is on the party seeking to compel arbitration to prove the existence of a valid agreement. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). To determine whether such an

1    agreement exists, "federal courts apply ordinary state-law principles that govern the formation of

2    contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation and internal

3    quotation marks omitted). "Whether a contract is illegal . . . is a question of law to be determined

4    from the circumstances of each particular case." *Timney v. Lin*, 131 Cal. Rptr. 2d 387, 390 (Ct. App.

5    2003).

6          "When considering a motion to compel arbitration, the court applies a standard similar to the

7    summary judgment standard of Fed. R. Civ. P. 56 . . . ." *Amaya v. Spark Energy Gas, LLC*, No. 15-

8    cv-02326-JSW, 2016 WL 1410755, at *3 (N.D. Cal. Apr. 11, 2016) (citation and internal quotation

9    marks omitted). "Only when there is no genuine issue of fact concerning the formation of the

10   [arbitration] agreement should the court decide as a matter of law that the parties did or did not

11   enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d

12   1136, 1141 (9th Cir. 1991) (citation and internal quotation marks omitted).

13   **IV.    ARGUMENT**

14       **A.  The Terms Containing the Arbitration and Delegation Clauses are Void.**

15         As a threshold matter, any purported agreement between Plaintiff and MyPrize to arbitrate is

16   immediately void under California law, and that threshold defect alone requires the Court, rather than

17   an arbitrator, to determine enforceability. California Civil Code § 1598 expressly provides that

18   "[w]here a contract has but a single object, and such object is ***unlawful***, whether in whole or in part,

19   or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, ***the***

20   ***entire contract is void***." (Emphasis added). Along similar lines, California Civil Code § 1608

21   provides that "if any part of a single consideration for one or more objects, or of several considerations

22   for a single object, is unlawful, ***the entire contract is void***." (Emphasis added). Accordingly, a

23   contract is deemed to be "not lawful" if it is "(1) contrary to an express provision of law; (2) contrary

24   to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good

25   morals." California Civil Code § 1667. Each of these statutory grounds are satisfied here.

26         Gambling and gambling-related contracts are affirmative examples of illegal contracts that

27   have routinely been declared void. *See, e.g.*, *Tak Chun Gaming Promotion Co. Ltd. v. Long*, 314 Cal.

28   Rptr. 3d 890, 896 (Ct. App. 2023) (collecting authorities); *Schenck v. Hirshfeld*, 22 Cal. App. 709,

1   710 (Ct. App. 2d Dist. 1913) (holding that "[c]ontracts of wager, or betting, fall generally within a

2   class which are said to be void because they contravene the policy of the law."). Under California

3   law, void contracts "are not legally binding, have no legal effect, and therefore are not contracts."

4   *Estate of Molino,* 81 Cal. Rptr. 3d 512, 520–521 (Ct. App. 2008). Accordingly, "void contracts cannot

5   be ratified." *Id*.

6        Here, Plaintiff's complaint adequately demonstrates that MyPrize is an illegal online casino

7   in violation of California law. *See* Compl. *generally*. Indeed, users of MyPrize's platform place

8   wagers on games of chance in the hopes of redeeming real monetary prizes Compl. at ¶ 62. These

9   business practices run afoul of California Penal Code § 3301b(a)), which provides that it is unlawful

10  to operate or allow a chance-based slot machine or device that may entitle the user to money, credit,

11  or any thing of value. *Id.* ¶ 67. Moreover, in 2025, California expressly amended Penal Code § 337o

12  to make it unlawful for entities to "operate, conduct, offer, or promote an online sweepstakes game"

13  within California that uses a "dual-currency" model (e.g., virtual coins plus "sweepstakes" coins

14  redeemable for cash/prizes).

15       Therefore, pursuant to California Civil Code §§ 1598 and 1608, the entirety of MyPrize's

16  Terms are void, including the arbitration and choice-of-law provisions contained within it. A contrary

17  ruling would yield an untenable result, allowing companies engaged in unlawful conduct to sidestep

18  California's criminal laws protecting public health and welfare by inserting arbitration agreements

19  and choice-of-law provisions in adhesive "take it or leave it" consumer contracts. Further, enforcing

20  arbitration here would be "tantamount to giving judicial approval to acts which are declared unlawful

21  by statute"—in this case illegal and unlicensed gambling. *Franklin v. Nat C. Goldstone Agency*, 204

22  P.2d 37, 40 (Ct. App. 1949); *see also Hotels Nevada, LLC v. Bridge Banc, LLC*, 30 Cal. Rptr. 3d 903,

23  907–908 (Ct. App. 2005) ("California law obligates the trial court to decide illegality issues when the

24  entire contract is illegal.").

25       MyPrize's assertion that the parties delegated "all issues" and "questions" of enforceability

26  and arbitrability is unavailing. Mot. at 10–11. It is well-settled that "where the dispute at issue

27  concerns contract formation, the dispute is generally for the courts to decide." *Granite Rock Co. v.*

28  *Int'l. Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010). Courts have repeatedly applied this

principle (including in the context of another gambling-related case) in holding that issues of contract formation cannot be delegated to an arbitrator, even where a delegation clause purports to do so. *See, e.g., Franz v. Hyundai Motor Am.*, No. 8:23-cv-01640-NS-ADS, 2024 WL 176227, at *4 (C.D. Cal. Jan. 12, 2024) ("[i]ssues of contract formation may not be delegated to an arbitrator, and must be decided by the court") (internal quotation marks omitted); *Ward v. Crow Vote LLC*, No. SACV 21-cv-01110-JVS (DFMx), 2021 WL 5927803, at *4 (C.D. Cal. Oct. 7, 2021) (in gambling-related case, finding that "[t]he fact that there is a delegation provision in the arbitration agreement does not fully insulate the agreement from judicial review" and that "a delegation provision may be unenforceable for the same reason as the broader arbitration agreement"). The Court must therefore determine, without deference to any alleged delegation, whether an enforceable arbitration agreement was ever formed.

The rationale for this is straightforward. Delegation cannot occur unless a valid agreement exists in the first place, and it is the court, not an arbitrator, that must determine whether such an agreement was ever formed. As the California Court of Appeal explains, delegation "presupposes the existence of an agreement between the parties, which the court necessarily ha[s] to decide before it could enforce any such delegation." *Garcia v. Stoneledge Furniture LLC*, 321 Cal. Rptr. 3d 181, 189 (Ct. App. 2024). Federal courts across the country are in accord. *See, e.g., Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 177 (4th Cir. 2025) (rejecting the notion that parties may delegate questions of contract formation to an arbitrator). This requirement is embedded in the Federal Arbitration Act itself, which directs courts, not arbitrators to resolve disputes concerning "the making of an arbitration agreement." 9 U.S.C. § 4. An arbitrator simply cannot assume authority where "the arbitration has been undertaken to enforce a contract that is illegal and against the public policy of the state." *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1, 7–8 (Cal. 2018). Indeed, "the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise," and "[i]n the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights." *Loving & Evans v. Blick*, 204 P.2d 23, 27 (Cal. 1949). That is precisely the case here.

1    Moreover, although some cases recognize that illegality may, in certain circumstances,

2  concern contractual "enforcement" rather than formation, this case is not one of them. California law

3  expressly distinguishes between void contracts for "unlawful purposes (prostitution, gambling, etc.)"

4  and contracts for "lawful purposes" which may be voidable if they are "carried on in an unlawful

5  manner." *Shephard v. Lerner*, 6 Cal. Rptr. 433, 434–435 (Ct. App. 1960). While voidable contracts

6  may be subject to arbitration, void contracts are not, because if "a contract is for an illegal purpose,

7  no enforceable rights or duties arose thereunder." *Id.*; *see also* 21 Williston on Contracts (4th ed.)

8  *Defenses to Arbitration*, § 57:14 ("[i]f an otherwise enforceable arbitration agreement is contained in

9  an illegal bargain, the party may avoid arbitration altogether."). The Alabama Supreme Court has

10  squarely applied this principle in the gambling context, explaining that "***when the agreement to***

11  ***arbitrate is itself based on gambling consideration, [it] is unconscionable***." *Macon County*

12  *Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152, 169 (Ala. 2016) (emphasis added). The same logic

13  applies here. Plaintiff has presented evidence, supported by the <u>California law now in effect</u>, that his

14  purported contract with MyPrize is based on illegal consideration and is void, which requires the

15  Court—not an arbitrator—to resolve that factual dispute. *See Rosenthal v. Great Western Fin.*

16  *Securities Corp.*, 926 P.2d 1061, 1071–1072 (Cal. 1996) (holding that "the trial court must determine

17  factual issues" where the plaintiffs provided evidence that the contract was void at inception.).

18  Accordingly, MyPrize's claim that that "the parties expressly agreed" to arbitrate all disputes is

19  baseless, Mot. at 7, as an agreement predicated on illegal consideration is void and unenforceable.

20    MyPrize's relies on *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) to argue

21  that the question of whether the contract is illegal and void must be answered by the arbitrator because

22  it is a challenge to the contract as a whole, and not just to the arbitration agreement. Mot. at 13. This

23  argument is misplaced. As detailed *supra*, the arbitration provision fails for illegality, independent of

24  the rest of the contract, because the consideration for agreeing to the arbitration provision was the

25  ability to gamble on an illegal gambling website. *See* Cal. Civil Code § 1608 (if "any part" of the

26  consideration is unlawful "the entire contract is void"). Consistent with the court's holding in *Macon*,

27  "the arbitration provision itself would constitute a void contract because it is, at least in part, based

28  on illegal gambling consideration." *Macon*, 226 So. 3d at 167 (distinguishing *Buckeye*). Furthermore,

"[i]f the entire contract is void *ab initio* because of fraud [or in this case illegality], the parties have not agreed to arbitrate any controversy" and that "under that circumstance" there is nothing that would *"*require a court to order arbitration." *Rosenthal*, 926 P.2d at 1074. This reasoning applies because if contract formation was negated by illegality, "there is simply no arbitration agreement to be enforced." *Id.*; *see also Estate of Molino*, 81 Cal. Rptr. 3d at 521 (void contracts "are not contracts"). As a result, the issue of illegality and formation are solely for the court to decide.

Based on the foregoing, MyPrize's motion must be denied

**B.  MyPrize Failed to Prove Plaintiff Agreed to Arbitration.**

To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). The "principle of knowing consent" required to establish contract formation "applies with particular force to provisions for arbitration," *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014), and applies equally to online agreements. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022). Unless the website operator can show that a consumer has actual knowledge of the terms, an enforceable online contract exists based on an inquiry notice only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests assent to those terms. *Id.* at 856. Under California law, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 13 (Ct. App. 2021).

MyPrize does not—and cannot—show that Plaintiff had actual notice of its Terms. Instead, it argues that Plaintiff was put on inquiry notice when he registered his account. Mot. 3–5. But MyPrize bears the burden to establish the existence of a valid arbitration agreement. *Norcia*, 845 F.3d at 1283. It cannot meet that burden here because it fails to show Plaintiff unambiguously manifest assent to the Terms for two independent reasons.

*First*, the registration screen did not clearly communicate what action, if any, would constitute assent to the Terms. For a user's click of a button to constitute an unambiguous manifestation of

1   assent, the user must be "explicitly advised that the act of clicking will constitute assent to the terms

2   and conditions of an agreement." *Berman*, 30 F.4th at 857. Thus, "the notice must explicitly notify a

3   user of the legal significance of the action she must take to enter into a contractual agreement." *Id*. at

4   858. "Even strongly implicit advisement isn't enough." *Godun v. JustAnswer LLC*, 135 F.4th 699,

5   711 (9th Cir. 2025). Consistent with this rule, courts have found that unambiguous assent is present

6   when there is an exact verbal match between the advisal language and the action constituting assent.

7   *See Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1159 (9th Cir. 2025) (finding no assent where advisal

8   language did not match button and providing examples of cases where advisal was sufficient because

9   language matched).

10      MyPrize's registration screen suffers precisely from this defect. It contains no advisal

11  instruction tying any specific "tap" or "click" to assent. The Ninth Circuit made clear that online

12  assent is only enforceable when the interface explicitly tells the user that the act of pressing a

13  particular button constitutes agreement. *Godun*, 135 F.4th at 710–11 ("a webpage must *explain* that

14  certain actions will be understood by the offeror to signal assent to contractual terms.") (emphasis in

15  original) (citing *Berman*, 30 F.4th at 857.) An "[e]xplicit advisement generally looks like an

16  explanatory clause, usually at the beginning of an advisal—for example: By *clicking* the Continue >>

17  button, you agree to the Terms[.]" *Id*. (quoting *Berman*, 30 F.4th at 858) (emphasis in original). And

18  *Chabolla* stresses that this requirement is dispositive because a user cannot unambiguously manifest

19  assent unless the website or app "explicitly notify[ies]" the user of the legal consequence of that

20  specific action. 129 F.4th at 1159–60. Reflecting this settled rule, courts uphold online assent only

21  where the interface expressly links a particular act with agreement. *See Obserstein* 60 F.4th at 515

22  ("by *clicking* 'Place Order,' you agree").

23      Here, by contrast, MyPrize's "written advisal and assent statement" merely states: "I am over

24  the age of 18 and agree to the Terms of Use (updated as of June 1, 2024) and Privacy Policy." Weisgal

25  Decl. ¶ 6. That language is insufficient because it "fails to indicate to the user what action would

26  constitute assent" and therefore does not invite an unambiguous manifestation of consent. *Godun*,

27  135 F.4th at 713. The problem is compounded by the fact that MyPrize offered multiple sign-up

28  pathways—Google, Twitter, Facebook, Apple, or Email. In that context, a reasonable consumer

would understand buttons such as "Sign Up with Google" or "Continue with Apple" to authorize third-party authentication, not to agree to contractual terms waiving the right to sue or participate in a class action. *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 767 (N.D. Cal. 2025). Nothing on the screen explains that selecting **any** of those options constitutes assent to the Terms of Use. Put simply, the registration flow lacks the essential link between a user's affirmative act and contractual assent. *See Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 936 (N.D. Cal. 2024); *Sanchez v. Maggy London Int'l Ltd.*, No. 3:25-CV-02107-H-JLB, 2025 WL 3097931, at *4 (S.D. Cal. Nov. 6, 2025). At most, MyPrize's interface presents a hyperlink accompanied by an ambiguous statement—insufficient as a matter of law to establish assent to arbitration.

*Second*, the purported "assent" fails because the checkbox was prechecked. Where assent is purportedly manifested by checking a box, the user must actually perform that action. *See Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1033 (N.D. Cal. 2024) (finding the plaintiff did not unambiguously manifest assent where the box next to the "I agree to the terms" language was pre-checked). Here, however, Plaintiff did not affirmatively select "I agree" or check any box; MyPrize did it for him. Mirzayan Decl. ¶ 6. A preselected "agreement" checkbox is the opposite of meaningful assent and cannot satisfy the requirement that assent be unambiguous. Courts routinely reject claims of assent in this circumstance. *See e.g.*, *Quamina*, 721 F. Supp. 3d at 1033; *Presson v. Alamo Intermediate II Holdings, LLC*, No. 24-CV-170 (ER), 2025 WL 692123, at *5 (S.D.N.Y. Mar. 4, 2025); *Rojas v. Gosmith, Inc.*, 2020 WL 831585 (N.D. Ind. Feb. 20, 2020) (when the agreement box is prechecked, and thus the party does not have to affirmatively act before moving to the next page, no mutual assent).

MyPrize's own description of its Terms underscores the defect. The Terms purportedly instruct users that they "must read these Terms carefully in their entirety **before checking the box for acceptance of these Terms**." Weisgal Decl. ¶ 9, Ex. A (emphasis in original). That language does not establish assent; it defeats it. First, a contract cannot manufacture consent through self-serving language buried in the contract itself. Second, it presumes an affirmative act—"checking the box"— that never occurred. Because the checkbox was prechecked, the very mechanism MyPrize identifies

11

1   as signaling assent was never triggered. For these reasons, MyPrize has not met its burden to prove

2   that Plaintiff unambiguously manifested assent to arbitrate, and the Motion should be denied.

3       **C.  California Law Controls.**

4       MyPrize incorrectly argues that Delaware law govern the interpretation of the arbitration

5   clause. First, as a result of MyPrize's Terms being void and unenforceable for lack of consideration

6   and failing to establish assent, for the reasons detailed *supra*, its purported Delaware choice-of-law

7   provision is also accordingly unenforceable. It is well settled that a choice-of-law provision cannot

8   operate where no valid contract was ever formed. *See, e.g., Jialu Wu v. iTalk Glob. Commc'ns, Inc.*,

9   No. CV 20-7150 PSG (PJWx), 2020 WL 8461696, at *2 (C.D. Cal. Oct. 21, 2020) ("It defies logic to

10  apply the choice-of-law provision of a contract to determine whether that contract was formed in the

11  first place.").

12      Even assuming, *arguendo*, that a valid contract exists, Delaware law still does not govern. As

13  a threshold matter, when deciding whether a choice-of-law provision applies, "a court must determine

14  whether the chosen state has a substantial relationship to the parties or their transaction, or … whether

15  there is any other reasonable basis for the parties' choice of law." *Ruiz v. Affinity Logistics Corp.*, 667

16  F.3d 1318, 1323 (9th Cir. 2012) (internal quotation marks omitted). If a substantial relationship exists,

17  the court must then evaluate whether "the chosen state's law is contrary to a fundamental policy of

18  California." *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 930 (N.D. Cal. 2012) (citing *Peleg*

19  *v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1446 (2012)). Finally, if the court finds a

20  conflict, it must determine whether the chosen state has a materially greater interest than California.

21  *Id.* If California has a materially greater interest, the choice-of-law provision is unenforceable. *See*

22  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992).

23      Defendant argues that Delaware has a substantial relationship because MyPrize is

24  incorporated and headquartered in Delaware. Mot. at 9. But Defendant offers no evidence to support

25  this assertion. Instead, it relies solely on the Terms of Service, which merely designate Delaware as

26  the location of arbitration. By contrast, MyPrize Sweepstakes' "Official Rules" list its address as

27  Miami, Florida. *See* Ex. D to Wiesel Decl. Unsupported assertions in adhesive terms are insufficient

28

OPPOSITION TO MOTION TO COMPEL ARBITRATION

1    to establish a substantial relationship for choice-of-law purposes, especially those contradicted by the

2    other exhibits.

3         Moreover, Delaware law, which has no equivalent to California Penal Code § 337, is contrary

4    to a fundamental policy of California. Courts have recognized that statutes criminalizing conduct

5    reflect fundamental state policy. *See Zounds Hearing Franchising, LLC v. Bower*, 2017 WL 4399487,

6    at *7 (D. Ariz. Sept. 19, 2017) ("It is hard to see how a statute making something a crime is not

7    fundamental policy, such that a party can commit the crime in the state and contract his way out of

8    liability."); *see also In re Baum*, 386 B.R. 649, 658 (Bankr. N.D. Ohio 2008) (referring to gambling

9    when reasoning that "whatever a state criminalizes is against the public policy of that state"). Statutes

10   regulating gambling also implicate fundamental policies because of the potential social harm. Further,

11   just because a state authorizes some forms of gambling does not mean that the state has no

12   fundamental policy against gambling generally. *See Carnival Leisure Indus., Ltd. v. Aubin*, 938 F.2d

13   624, 625 (5th Cir. 1991) ("The enactment of statutes legalizing some forms of gambling … hardly

14   introduce a judicially cognizable change in public policy with respect to gambling generally"); *cf.*

15   *King Int'l Corp. v. Voloshin*, 366 A.2d 1172, 1174 (Conn. Super. Ct. 1976) ("It is not incongruous

16   for a legislature to sanction certain forms of gambling and still refuse the collection of gambling

17   debts.").

18        Finally, the fact that California has a materially greater interest is self-evident. None of the

19   social harms caused by unlawful online gambling in California are felt in Delaware. California—not

20   Delaware—loses licensing revenue as a result of MyPrize's illegal gambling operation in this state.

21   In a case involving a competing online gambling website, the Kentucky Supreme Court described in

22   detail the impact of online gambling addiction on state residents and their families, the drain on

23   government funds to address societal harm, the rise in teenage online gambling addiction, and the

24   increase in crime associated with online gambling addiction. *See Commonwealth ex rel. Brown v.*

25   *Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792, 804–05 (Ky. 2020). This holds equally true

26

27

28

1  in California. Conversely, Delaware experiences none of the social harm caused in California and has

2  no interest in permitting illegal gambling to occur within this state.[1]

3  **D.  The Terms are Unconscionable.**

4  MyPrize's motion should also be denied because the Terms are unconscionable. The FAA

5  expressly permits courts to invalidate arbitration provisions based on "generally applicable contract

6  defenses" recognized under state law—including unconscionability. *AT&T Mobility LLC v.*

7  *Concepcion*, 563 U.S. 333, 339 (2011).

8  Under California law, "a contractual provision is unenforceable if it is both procedurally and

9  substantively unconscionable." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir.

10  2013) (citation omitted). While both procedural and substantive unconscionability must be present,

11  "they need not be present to the same degree. Instead, they are evaluated on a 'sliding scale.' The

12  more substantively oppressive the contract term, the less evidence of procedural unconscionability is

13  required to conclude that the term is unenforceable." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 690 (Cal.

14  2019) (citation omitted). "The ultimate issue in every case is whether the terms of the contract are

15  sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement."

16  *Id*. As shown below, a review of all relevant circumstances supports a finding that the Terms are

17  procedurally and substantively unconscionable and should not be enforced.

18  i.  The Arbitration Agreement is Procedurally Unconscionable.

19  As a threshold matter, procedural unconscionability turns on oppression or surprise arising

20  from unequal bargaining power. *See Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 292 Cal. Rptr.

21  3d 740,  752–753 (Ct. App. 2022). The Terms here are "procedurally unconscionable" because they

22

23

_____

24  [1] Even assuming *arguendo* that the Delaware choice-of-law provision governs (which it does not),
the result here would be no different. Delaware law similarly recognizes that contracts predicated on

25  illegal consideration are void. *See XRI Inv. Hldgs. LLC v. Holifield*, 283 A.3d 581, 651 (Del. Ch.
2022) ("[T]he Delaware Supreme Court has stated that 'contracts that offend public policy or harm

26  the public are deemed void'"). Delaware makes it expressly illegal to offer gambling or private
lotteries. *See* 11 Del. C. §§ 1401-1402. Similarly, it is illegal under Delaware law to take wagers for

27  gambling. *See id.* at § 1403. Thus, even under the scrutiny of Delaware law, the purported choice-of-
law provision collapses under the weight of the illegality it attempts to obscure.

28

are "a contract of adhesion, *i.e.,* a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). An arbitration agreement is at least minimally procedurally unconscionable if it is a contract of adhesion. *See Newton v. Am. Debt Servs., Inc.,* 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012), *aff'd* 539 App'x 692 (9th Cir. 2013). This is because contracts of adhesion have a higher level of "oppression," which "addresses the weaker party's absence of choice and unequal bargaining power that results in no real negotiation." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (explaining that procedural unconscionability focuses "on the level of oppression and surprise involved in the agreement").

The elements of oppression and surprise are satisfied because "the arbitration provision was presented on a take-it-or-leave-it basis" and "was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (en banc). MyPrize drafted the Terms, provided no opportunity for Plaintiff or putative Class members to negotiate or modify the actual Terms, and (according to MyPrize) required acceptance as a condition to use (or continue using) its platform. This alone establishes a substantial degree of procedural unfairness, especially with a user of unsophisticated bargaining power.

The Terms are also procedurally unconscionable because of the degree of "surprise" they employ. "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria,* 733 F.3d at 922. The element of surprise is plainly present here because MyPrize hid the arbitration provisions on page 39 of a 45-page document with single-space paragraphs, written in a small font without anything distinguishing the importance of an arbitration clause. *See, e.g., Rios v. HRB Digital LLC*, No. 25-cv-03530-EMC, 2025 WL 3003768, at *7 (N.D. Cal. 2025) (finding "surprises" where arbitration was embedded deep within "a lengthy, 21-page, single-spaced contract … beginning on page 15."). This conclusion is further reinforced by MyPrize's additional procedural barrier: a mandatory and time-consuming dispute resolution conference that users must complete before initiating arbitration. *See* Ex. A to Weisgal

1    Decl. (requiring the conference occur within thirty days after the other party receives notice only to

2    receive a response within 30 days).

3        Moreover, contrary to MyPrize's argument, as the court in *Rios* made clear, "the existence of

4    an opt-out clause does not automatically render an arbitration agreement procedurally conscionable."

5    Rios, 2025 WL 3003768, at *7–8. California courts routinely reach the same conclusion. *See, e.g.,*

6    *Swain v. LaserAway Med. Grp., Inc.*, 270 Cal. Rptr. 3d 786 (Ct. App. 2020) (holding that "an opt out

7    provision does not insulate an arbitration agreement from a finding of procedural unconscionability");

8    *Johnson v. Stoneridge Creek Pleasanton CCRC LLC*, No. A-165800, 2023 WL 7125117, at *2–3

9    (Cal. Ct. App. Oct. 30, 2023) (affirming that, contrary to defendant's expansive interpretation of

10   *Mohamed*, "[u]nder California law, 'an opt-out provision does not insulate an arbitration agreement

11   from a finding of procedural unconscionability[.]'"). Court's reject opt-out provisions as inadequate

12   where, as here, the plaintiff lacked meaningful alternatives, they fail to provide an "authentic informed

13   choice," and were buried without disclosure. *Smith v. Folsom Invs., L.P.*, No. C097549, 2023 WL

14   8794888, at *4 (Cal. Ct. App. Dec. 20, 2023).

15       Recently, the Superior Court of California for San Francisco County reached the same

16   conclusion against a mobile gambling game operator. *See Portugal v. High 5 Entertainment, LLC*,

17   No. CGC-24-621047 (Cal. Super. Ct. Aug. 28, 2025) (*Portugal*) at 4, attached hereto as Exhibit B. In

18   *Portugal*, the court found the defendant's terms constituted a contract of adhesion and were

19   procedurally unconscionable notwithstanding the presence of an opt-out. *Id*. The court emphasized

20   the inherent unfairness of a system where "[a] user who agrees is told that the agreement will change

21   from time to time without notice." *Id*. It held that procedural unconscionability existed even though

22   the user had the opportunity to opt-out where the rules of the AAA arbitral forum are not provided

23   with the terms. *Id*.

24       As in *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022), these

25   combined factors—adhesion, lack of meaningful choice, buried and complex terms, and additional

26   procedural hurdles—compel a finding of procedural unconscionability.

27                ii.    The Arbitration Agreement is Substantively Unconscionable

28

OPPOSITION TO MOTION TO COMPEL ARBITRATION

"Substantive unconscionability examines the fairness of a contract's terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) (quoting *OTO*, 447 P.3d at 692). A provision is unconscionable if it is "unreasonably favorable to the more powerful party." *Lim*, 8 F.4th at 1002. "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided." *Id.* A provision is also unconscionable if it would "deter" or have a "chilling effect" on potential litigants enforcing their rights, *id.* at 1004–05, or if the provision "contravene[s] the public interest or public policy." *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 202 (Cal. 2013). An agreement is also unconscionable if "it impose[s] a system of arbitration on [a consumer] that seeks to maximize the advantages and minimize the disadvantages of arbitration for itself at the [consumer's] expense." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 693 (Cal. 2000). As detailed below, MyPrize's arbitration clause is substantively unconscionable for a multitude of reasons.

<u>*First*</u>, MyPrize's Terms are illusory. Under California law, "[a]n agreement is illusory, and no enforceable contract has been created, if a promisor is 'free to perform or to withdraw from the agreement at his own unrestricted pleasure.'" *Moua v. Optum Servs., Inc.,* 320 F. Supp. 3d 1109, 1113 (C.D. Cal. 2018) (quoting *Mattei v. Hopper*, 51 Cal. 2d 119, 122 (1958)). Similarly, "[a] contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." *Moua,* 320 F. Supp. 3d at 1113. Here, MyPrize reserves unilateral authority to modify the Terms and arbitration clause to its benefit and at its sole discretion at any time, including after a claim has already arisen, with no corresponding right for Plaintiff or other users to negotiate the terms they are purportedly bound by. *See* Ex. A to Weisgal Decl. at 2; *see Moua,* 320 F. Supp. 3d at 1114 (finding an arbitration policy illusory because the unilateral modifications applied to claims which had already accrued); *see also Peleg*, 140 Cal. Rptr. 3d at 67–68 (finding arbitration agreement that applies a contract change to claims that have accrued or are known to the defendant as illusory).

Worse yet, MyPrize does not need provide any notice to its consumers. Courts consistently find unilateral modification provisions as classic examples of substantively unconscionable. *See, e.g., Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1179 (9th Cir. 2003) (finding that "the unilateral

1  power to terminate or modify the contract is substantively unconscionable," where despite a

2  requirement of providing "exiguous notice," "such notice is trivial when there is no meaningful

3  opportunity to negotiate the terms of the agreement."). Such provisions violate the foundational

4  principle that arbitration under the FAA is a matter of "consent, not coercion." *Mastrobuono v.*

5  *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

6      As a result, the Court should find that no contract was ever formed, as opposed to simply

7  severing the unilateral modification provision. As the unilateral modification provision is central to

8  the Terms' main purpose, severing the modification clause would not cure the Term's defects. *See,*

9  *e.g., Moua*, 320 F. Supp. 3d, at 1114–15 (holding that severance "is not a cure" where "the

10  modification provision of the Policy taints the entirety of the agreement such that severance is not a

11  viable option." The court further emphasized that "[t]he modification provision is not collateral to the

12  main purpose of the Policy, but rather creates an imbalance of mutuality between the employer and

13  the employee. This imbalance renders the agreement's entire purpose—to impose arbitration—an

14  illusory promise."). Courts across the country are in accord. *See, e.g., Nat'l Fed'n of the Blind v. The*

15  *Container Store, Inc.*, 904 F.3d 70, 87 (1st Cir. 2018) (explaining that severing provisions in an

16  illusory agreement would be an "absurd process" because the court would be "reviving a contract

17  [that] was never formed for its lack of consideration, omitting the change-in-term clause that was fatal

18  to the contract's proper formation, to therefore conclude a contract was formed."). Indeed, where "a

19  court is unable to cure this unconscionability through severance or restriction, and is not permitted to

20  cure it through reformation and augmentation, it must void the entire agreement." *Armendariz*, 6 P.3d

21  669 at 776. A similar result must be reached here.

22      *Second*, the Terms contain an unconscionably one-sided indemnification clause which only

23  requires Plaintiff—and not MyPrize—to indemnify MyPrize from "any and all third party claims

24  against the company related in any way" his use of the platform. *See* Ex. A to Weisgal Decl. at 14.

25  Several courts have found similar non-reciprocal indemnification clauses to be unconscionable given

26  their one-sidedness and lack of mutuality. *See, e.g., Gostev v. Skillz Platform, Inc.*, 305 Cal. Rptr. 3d

27  248, 264 (Ct. App. 2023) (finding arbitration agreement unconscionable which contained similar

28  indemnification clause); *see also Lhotka v. Geographic Expeditions, Inc*., 104 Cal. Rptr. 3d 844, 852

1  (Ct. App. 2010) (finding nonreciprocal limitation on damages and indemnification obligations

2  contributed to conclusion the arbitration clause was "so one-sided" as to be substantively

3  unconscionable).

4      *Third*, the Terms imposes a one-year limitations period on "any claims" arising out of the

5  Terms "without regard to any longer period of time which may be provided by any period of limitation

6  or repose by law or statute." *See* Ex. A to Weisgal Decl. at 15. This provision is substantively

7  unconscionable because it significantly and impermissibly shortens the limitations period on

8  Plaintiff's CLRA and UCL claims, which range from three to four years, respectively. *See* Cal. Civ.

9  Code § 1783 (3 years for CLRA); Cal. Bus. & Prof. Code § 17208 (4 years for UCL); *see also*

10  *Portugal*, at 4 (finding a "high degree of substantive unconscionability" where the terms imposed a

11  one-year limitations period). "Contractual agreements to shorten the statute of limitations period are

12  generally disfavored because they derogate statutory intent." *Jackson v. S.A.W. Ent. Ltd.*, 629 F. Supp.

13  2d 1018, 1028 (N.D. Cal. 2009) (internal quotation omitted). Indeed, a contractual clause restricting

14  the period in which an action, such as arbitration, may be commenced is "unconscionable where the

15  period is 'far shorter' than that otherwise available under California law." *Brown v. Dow Chem. Co.*,

16  No. 18-cv-07098-MMC, 2019 WL 484211, at *4 (N.D. Cal. Feb. 7, 2019) (quoting *Wherry v. Award,*

17  *Inc.*, 123 Cal. Rptr. 3d 1, 7 (Ct. App. 2011)); *see also Pandolfi v. AviaGames, Inc.,* No. 23-CV-05971-

18  EMC, 2024 WL 4051754, at *10 (N.D. Cal. Sept. 4, 2024) (finding similar one-year statute of

19  limitations waiver unconscionable).

20      *Fourth*, MyPrize's Terms contain a damages limitation provision that waives the right to seek

21  "DIRECT, INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE

22  DAMAGES, OR ANY OTHER LOSSES, COSTS, OR EXPENSES OF ANY KIND

23  (INCLUDING, WITHOUT LIMITATION, LOST PROFITS, LOSS OF DATA, LEGAL FEES,

24  EXPERT FEES, COST OF PROCURING SUBSTITUTE SERVICES, LOST OPPORTUNITY,

25  OR OTHER DISBURSEMENTS)." Ex. A to Weisgal Decl. at 14. Another provision confirms the

26  arbitration may not result in punitive, exemplary damages, nor may the arbitrator award any

27  incidental, indirect, or consequential damages, including damages for lost profits." *Id*. at 20. This

28  damages limitation is unconscionable because it prohibits, *inter alia*, the punitive damages available

under the CLRA. See Cal. Civ. Code § 1780(a)(4). "California courts have repeatedly refused to enforce contractual limitations on statutorily imposed remedies such as punitive damages as unconscionable, based primarily on the rationale that the remedies are important to the effectuation of that statute's policy." *Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1155 (N.D. Cal. 2013), *aff'd*, 601 F. App'x 461, 463 (9th Cir. 2014). Arbitration agreements cannot strip statutory remedies, including punitive damages and attorneys' fees. Agreements limiting the types of remedies available under the CLRA, including punitive damages, violate the "principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees." *Newton,* 854 F. Supp. 2d at 724 (quoting *Armendariz*, 6 P.3d at 682). Courts regularly find such provisions substantively unconscionable. *MacClelland*, 609 F. Supp. 3d at 1037 ("Because the limitation of liability clause prevents Plaintiffs from receiving damages that they are entitled to under CLRA, this term is substantively unconscionable").

*Fifth*, MyPrize's Terms include several provisions designed to deter customers from pursuing claims against it, even in arbitration. This includes the requirement of a pre-arbitration notice of dispute and a prohibit on "collective actions." Ex. A to Weisgal Decl. at 21. MyPrize's mass arbitration provision resembles the mass arbitration provision the Northern District of California struck down in *Pandolfi*, 2024 WL 4051754, at \*5, and in *MacClelland*, 609 F. Supp. 3d at 1042, as unconscionable.

For instance, this clause unfairly and unconscionably delays adjudication of claims and contravenes public policy. Like the agreement in *Pandolfi*, mass arbitration is triggered when 25 or more customers who are represented by the same or coordinated counsel which are of a "substantially similar nature." Ex. A to Weisgal Decl. at 21. Indeed, this "sets a cap" on the numbers of arbitrations against MyPrize that may proceed at one time. *MacClelland*, 609 F. Supp. 3d at 1040. Further, the "prospect of delay" caused by the mass arbitration provision will also have "a chilling effect on [consumers], deterring them from vindicating their rights" against MyPrize. *See Pandolfi*, 2024 WL 4051754, at \*11. Such terms that "contravene the public interest or public policy" are substantively unconscionable. *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016).

This is particularly problematic because AAA statistics show that the average disposition time for an arbitration takes 11.6 months.[2] Were Plaintiff's counsel to retain 500 clients—which is conservative given the estimated amount of customers affected by MyPrize's conduct, the number of online complaints, and the number of individuals who have contacted undersigned counsel—a resolution for these clients could take approximately 10 years. Requiring consumers to wait months, or more likely years, before they can even submit a demand for arbitration is "unreasonably favorable" to MyPrize. *MacClelland,* 609 F. Supp. 3d at 1042 (citing *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017)). Delaying the ability of one to vindicate a legal claim by years, "conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied." *MacClelland,* 609 F. Supp. 3d at 1042 (citing *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021)).

Moreover, the mass arbitration provision also lacks mutuality, which "is a paramount consideration in assessing substantive unconscionability." *MacClelland*, 609 F. Supp. 3d at 1042 (internal quotations omitted). Although it "imposes restrictions on a law firm representing twenty-five or more of [MyPrize's] customers with 'similar claims'" by requiring batched proceedings when 25 or more claimants submit notices raising similar claims and are represented by the same counsel, MyPrize "is apparently free to select the same law firm to represent it in all its arbitrations." *Id.* at 1042.  MyPrize is thus able to enjoy all the advantages that come from having the same law firm, "while law firms that represent 25 or more of [Defendant's] customers may be forced to sideline any clients which would exceed the numeric cap." *Id.* This is particularly "troubling" because to avoid the clause, "[consumers] would have to find different counsel, which affects the right to counsel of their choice or indeed, the ability to find any counsel at all: where the individual claims are small (as consumer claims often are), it may be difficult to find an attorney who represents only a single or

---

[2] Micronomics, "Efficiency and Economic Benefits of Dispute Resolution through Arbitration Compared with U.S. District Court Proceedings" (March 2017) https://go.adr.org/rs/294-SFS-516/images/Economic%20Impact%20of%20Delay%20Micronomics%20Final%20Report%20(2017-03-07).pdf (last accessed Jan. 23, 2026).

21

1   small number of similarly situated clients." *Pandolfi*, 2024 WL 4051754, at *11. Accordingly, this
2   further supports a lack of mutuality and one-sidedness.

3       Taken in the aggregate, MyPrize's Terms are one-sided, overreaching, and specifically
4   engineered to deter consumers from ever pursuing their rights. The Terms collectively impose exactly
5   the type of "overly harsh" and "unreasonably favorable" terms that California law forbids. Based on
6   the foregoing, the Court should therefore find the arbitration agreement unconscionable and deny
7   MyPrize's Motion.

8           iii.    The Public Injunctive Relief Waiver is Unconscionable.

9       The Terms here also contain a public injunctive relief waiver. Ex. A to Weisgal Decl. at 15,
10  22 ("YOU MAY NOT PROCEED IN ARBITRATION. . . . OR OTHERWISE SEEK TO RECOVER
11  ON BEHALF OF OTHERS OR FOR THE BENEFIT OR USE OF OTHERS IN ANY TYPE OF
12  CLAIM OR ACTION" and "TO THE EXTENT ANY OF THE LIMITATIONS OF REMEDY,
13  INCLUDING WAIVER OF THE RIGHT TO PRIVATE OR PUBLIC INJUNCTIVE RELIEF . . ."
14  ). An agreement, like this one, that prohibits the right to seek public injunctive relief in any forum is
15  contrary to California public policy and unenforceable under California law. *See McGill*, 393 P.3d at
16  95; *see also, e.g.*, *Portugal*, at 4 (finding arbitration agreement unenforceable where it precluded the
17  arbitrator from awarding public injunctive relief). The Ninth Circuit has likewise held that similar
18  language prevents the plaintiff from seeking public injunctive relief in any forum. *See McArdle v.*
19  *AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019). Courts repeatedly find similar public-
20  injunctive-relief waivers like this one unconscionable. *See, e.g.*, *MacClelland*, 609 F. Supp. 3d at
21  1037; *Vasquez v. Cebridge Telecom CA, LLC*, 569 F. Supp. 3d 1016, 1029 (N.D. Cal. 2021)
22  (examining clause where arbitration must be conducted on an "individual basis" and where arbitrator
23  was prohibited from awarding "non-individualized relief"). Because the Terms unmistakably bar
24  public injunctive relief in any forum, they violate *McGill* and are thus unenforceable. Accordingly,
25  the Motion must be denied.

26          iv.    There is no Clear and Unmistakable Delegation.

27      MyPrize incorrectly contends that Plaintiff delegated the issue of enforceability to the
28  arbitrator. That argument fails because the Terms are internally inconsistent and do not clearly and

unmistakably delegate arbitrability. "An agreement to arbitrate the issue whether a dispute is subject to arbitration—i.e., the question of arbitrability—must be clear and unmistakable." *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1565 (2009). Even broadly worded arbitration clauses may fail this standard where other contractual language creates ambiguity. *See Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (2012).

That is the case here. Rather than assigning severability exclusively to the arbitrator, the Terms provide that "the forum presiding over any dispute" may construe the Terms and "blue-pencil" them. Ex. A to Weisgal Decl. at 22. This language contemplates judicial involvement and suggests that a court—not an arbitrator alone—may determine enforceability. Similar language was dispositive in *Parada*, where a provision allowing a "trier of fact of competent jurisdiction" to decide enforceability defeated delegation. 176 Cal. App. 4th at 1566. As in *Parada*, the Terms here expand severability determinations beyond the arbitrator to another unspecified "forum presiding over the dispute," foreclosing a finding of clear and unmistakable delegation. *See Parada*, 176 Cal. App. 4th at 1565; *see also Ajamian*, 203 Cal. App. 4th at 791; *Hartley v. Super. Ct.*, 196 Cal. App. 4th 1249, 1257–58 (2011); *Hageman v. Hyundai Motor Am.*, 758 F. Supp. 3d 1194, 1202 (C.D. Cal. 2024). Because the parties did not clearly and unmistakably delegate enforceability, the Court may decide whether the Terms are unconscionable.

<strong>v.   <u>The Court Should Not Sever the Aforementioned Provisions.</u></strong>

A trial court has discretion to refuse to enforce an entire arbitration agreement if the agreement "contains more than one unlawful provision[.]" *Armendariz*, 6 P.3d at 696–97 (affirming denial and refusing to sever two unconscionable provisions).[3] Agreements such as MyPrize, which contain multiple defects, "indicate a systematic effort to impose arbitration … not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage." *Armendariz*, 6 P.3d at 696–97 (declining to sever the unconscionable provisions because (1) there was more than one, (2) the lack of mutuality permeated the agreement to such an extent that the court

---

[3] *See also Wherry*, 123 Cal. Rptr. 3d at 7–8 (refusing to sever agreement with three unconscionable provisions).

1    could not strike or restrict a clause to remove the "unconscionable taint," and (3) court could not

2    "reform the contract … by augmenting it with additional terms"); *see also MacClelland,* 609 F. Supp.

3    3d at 1045–1046 (refusing to apply severability clause to save an agreement with multiple

4    unconscionable clauses).

5           MyPrize's Terms contain multiple, inter-connected provisions that indicate a systematic effort

6    to impose arbitration as an inferior forum. The sheer number of unconscionable provisions

7    demonstrate that the interests of justice would be thwarted by severance. *See supra*. Moreover, the

8    chilling effect of the batching provision in the mass arbitration clause alone is sufficient to deny

9    severance of the clauses. *Pandolfi*, 2024 WL 3558853, at *8 (finding severance would be

10   inappropriate because it "does not cure the problematic chilling effect of the unconscionable

11   [Batching Provision]."). This is because MyPrize is "not entitled to rely on severance as a fix when

12   they profited from the inclusion of the bellwether provision in the first place, i.e., because it may have

13   had a chilling effect that deterred players from ever pursuing their rights in the arbitral forum available

14   to them." *Id*. Moreover, the existence of a severability clause "does not change the fact that where an

15   agreement is permeated by unconscionability, a court will not sever the unlawful provisions."

16   *MacClelland*, 609 F. Supp. 3d at 1045; *see also Portugal*, at 4–5 (exercising discretion to not sever

17   the unconscionable terms because "the agreement is permeated with unconscionability and the

18   purpose of the agreement is one-sided.").

19   **E.  The Question of Whether a Valid Agreement to Arbitration Exists Must be Decided
20          by this Court, not an Arbitrator.**

21          As discussed *supra*, the question of whether an agreement to arbitrate has been formed must

22   be decided by the Court and cannot be delegated to an arbitrator. It is undisputed there is a strong and

23   long-standing presumption that courts, not arbitrators, determine threshold questions of arbitrability.

24   *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–945 (1995). MyPrize argues to the

25   contrary, specifically relying on the purported delegation provision as constituting "clear and

26   unmistakable" evidence of the parties' intent to delegate questions of arbitrability to an arbitrator.

27   Mot. at 19–20. But where, as here, Plaintiff did not agree to arbitrate his claims in the first place,

28   *supra*, he also did not—and could not—agree to delegate questions of arbitrability to an arbitrator.

1  Indeed, the threshold inquiry centers on determining whether a valid agreement to arbitrate was

2  formed in the first instance—a question that this Court, and not the arbitrator, must answer. *See Kum*

3  *Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) ("challenges to the very

4  existence of the contract are, in general, properly directed to the court"); *Dawson,* 2025 WL 1651940,

5  *1 ("the law of this Circuit is unequivocal that the question of whether a valid agreement to arbitrate

6  was formed in the first instance must be answered by this Court, and not an arbitrator, regardless of

7  any delegation provision or incorporation of arbitral rules"); *Eiess v. USAA Fed. Sav. Bank*, 404 F.

8  Supp. 3d 1240, 1248 (N.D. Cal. 2019) ("The issue of contract formation, however, is not a delegable

9  gateway issue.").

10      MyPrize's authorities cannot compel a different result here because those cases it relies upon

11  did not involve the preceding, disputed issue of contract formation. Nor does any purported

12  incorporation of arbitral rules distort the fact that only this Court can determine the threshold issue of

13  whether an agreement to arbitrate was formed. *See, e.g., Belyea v. GreenSky, Inc*., No. 20-cv-01693-

14  JSC, 2020 WL 3618959, at *4 (N.D. Cal. July 2, 2020) (rejecting defendant's argument that

15  incorporation of arbitral rules delegates arbitrability where there is a challenge to the existence of an

16  enforceable agreement to arbitrate in the first place); *see also Eiess*, 404 F. Supp. 3d at 1248 (refusing

17  to delegate arbitrability notwithstanding incorporation of AAA and JAMS rules where the question

18  of contract formation was at issue). Thus, regardless of what MyPrize's delegation provision

19  purportedly states, it is well-settled that the threshold question of whether an enforceable agreement

20  to arbitrate exists in the first place simply cannot be delegated and must be decided by this Court.

21  **V.    CONCLUSION**

22      In sum, MyPrize seeks enforcement of a contract premised on illegal consideration—one the

23  Plaintiff never saw nor agreed to—that purportedly forces his meritorious claims into an inferior

24  forum through rules that MyPrize reserves the right to change at will, and will predictably do so solely

25  for its own advantage. This request has no legal or factual merit. For the reasons set forth above, the

26  Court should deny MyPrize's Motion.

27

28

1

Dated: January 23, 2026                          Respectfully submitted,

2

3                                                By: */s/ Scott Edelsberg*

4                                                **EDELSBERG LAW, P.A.**
                                                 Scott Edelsberg, Esq. (CA Bar No. 330990)
5                                                1925 Century Park E #1700
                                                 Los Angeles, CA 90067
6                                                Telephone: 305-975-3320
                                                 scott@edelsberglaw.com
7

8                                                **SHAMIS & GENTILE, P.A.**
                                                 Edwin Elliott*
9                                                14 NE 1st Ave., Suite 705
                                                 Miami, FL 33132
10                                               Telephone: 305-479-2299
                                                 Edwine@shamisgentile.com
11

12                                               *Pro Hac Vice forthcoming

13                                               *Counsel for Plaintiff and the Proposed Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO COMPEL ARBITRATION